## HOEHN v. LAUTZ.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. SERVANT'S INJURIES—EMPLOYERS' LIABILITY ACT—NOTICE—TIME OF SERVING.

Under the employers' liability act (Laws 1902, p. 1749, c. 600), section 2 of which provides that no action shall be maintained·under the act unless notice of injury is given to the employer within 120 days after the occurrence of the accident, but that, in case of death of the employé without having given notice, his executor may give such notice within 60 days, where the employé dies, a notice given by the administrator within 120 days from the accident, though after 60 days from the appointment of the administrator, is given in time.

2. SAME—NEGLIGENCE—FREEDOM FROM CONTRIBUTORY NEGLIGENCE.

In order to maintain an action under the employers' liability act (Laws 1902, p. 1748, c. 600), giving an action to an employé injured, while himself in the exercise of due care, by reason of any defect in the ways, works, and machinery of the employer, or by reason of the negligence of a servant acting as superintendent, it is necessary to show negligence on the part of the employer, and the absence of contributory negligence on the part of the servant injured.

3. SAME—NEGLIGENCE—DEFECT IN APPLIANCES—EVIDENCE.

In an action for servant's injuries, evidence *held* insufficient to show that there was any defect in the appliance (an apparatus for cleansing a drum by water, heated with steam) which caused the accident.

4. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action for servant's injuries, evidence *held* to show that the cause of the accident was the carelessness of the servant in turning too much steam into a drum which he was cleansing, and the head of which was blown off.

Appeal from Special Term, Erie County.

Action by Theresa Hoehn, as administratrix of Anton Hoehn, deceased, against Fred C. M. Lautz. From a judgment of nonsuit, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Hamilton Ward, Jr., for appellant.

Love & Quackenbush, for respondent.

WILLIAMS, J. The judgment and order should be affirmed, with costs.

The action was brought under the employers' liability act (chapter 600, p. 1748, Laws 1902) to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The accident causing the death occurred January 27, 1903. The administratrix was appointed February 6, 1903. The notice, under section 2 of the employers' liability act, was given May 14, 1903, which was 108 days after the death, and 98 days after the appointment of the administratrix. Section 2, above referred to, provides:

"Sec. 2. No action for recovery of compensation for injury or death under this act shall be maintained unless notice of the time, place and cause of the injury, is given to the employer within one hundred and twenty days * * * after the occurrence of the accident causing the injury or death. * * *

If from physical or mental incapacity, it is impossible for the person injured to give notice within the time provided in this section, he may give the same within ten days after such incapacity is removed. In case of his death without having given such notice, his executor or administrator may give such notice within sixty days after his appointment," etc.

The notice in this case was served within 120 days after the accident, but not within 60 days after appointment of the administratrix. Was it served in due time, so as to give the plaintiff the benefit of the provisions of the act? We think it was. It seems to us the real intention of the statute was to give 120 days in all cases to serve the notice, and to give time beyond that in cases of incompetency or death, if additional time was necessary—10 days after the incapacity was removed, or 60 days after the appointment of the administrator. We do not think the intention in either case was to shorten the 120 days in which the notice might be given. We see no reason to hold so strict a rule against a plaintiff in an action under the statute. The question seems not to have been passed upon by the courts. The nonsuit cannot, therefore, be sustained upon the ground that no sufficient notice was given under the act in question. The plaintiff was entitled to such benefits as were provided under the statute, but, in order to maintain the action, it was necessary for her to give evidence tending to show negligence on the part of the defendant, and the absence of contributory negligence on the part of her intestate, under the provisions of the act in question.

Section 1 of the act provides:

"Where * * * personal injury is caused to an employee, who is himself in the exercise of due care and diligence: * * * (1) By reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer. * * * (2) By reason of the negligence of any person in the service of the employer [being or acting as superintendent, etc.] The employee, or in case the injury results in death, the executor or administrator of the deceased employee * * * shall have the same rights of compensation and remedies against the employer as if the employee had not been an employee of, nor in the service of the employer, nor engaged in his work."

It was claimed by the plaintiff that the death of her intestate resulted from the negligence of the defendant, or its employés for whose negligence he was responsible, with reference to defects in the condition of his ways, works, and machinery, and their failure to instruct the intestate as to the dangers to be apprehended from the use of the appliances which resulted in the accident and death. The facts appearing from the record are briefly as follows: The defendant's business was, in part, the manufacture and sale of commercial glycerin. This glycerin was put in iron tanks or drums for shipment, each capable of holding about 1,100 pounds. The tanks or drums were originally used for chemically pure glycerin manufactured and sold by others. After the tanks or drums had been once used for chemically pure glycerin they were no longer fit for that use, but were fit for commercial glycerin, provided they were properly cleansed. The defendant purchased these drums from the dealers in chemically pure glycerin, and, before filling them with his own glycerin, caused them to be cleansed, and the plaintiff's intestate was employed to do this work. He had been engaged in doing this work for five or six

years before his death. He had the entire charge of the drums from the time they were received at the defendant's factory until the cleansing was done. The manner of cleansing and the means used were as follows: They were taken to defendant's cellar, and put upon a rack, which was on rollers, so that the drums might be easily rotated from side to side. A piece of ordinary hose was connected with the city water system, and inserted in the bung of the drum, and the drum filled half full of water in this way. The bunghole was two inches in diameter. Through this hole was inserted a steam pipe three-quarters of an inch in diameter externally, and the steam turned into the water for the purpose of heating it and making the cleansing process easier. The steam was taken from a boiler near by, and was turned into the pipe inserted in the drum by means of a valve or cock. When the water was sufficiently heated, the steam was turned off, the pipe removed from the drum, the drum was rotated from side to side, and then turned so the water would run out of the bunghole upon the cellar bottom, and this process had sometimes to be repeated in order to properly cleanse the drum. While the intestate was engaged in cleansing one of these drums, and the steam was turned into the same, one end of the drum was blown off, and the hot water and steam escaped, and the accident resulted in his death a few hours later. No one saw the accident, and the immediate cause thereof was a matter of inference from such facts as were given in evidence upon the trial. The steam, concededly, was the power that caused the blowing off of the drumhead, but precisely how this result came about, when nothing of the kind had occurred before during all the years drums had been cleansed by this process, was a matter of more or less uncertainty. The intestate had control of the steam, and could turn on as much or as little as he saw fit. Apparently he turned on an excessive amount on the occasion in question, and that caused the accident. There was no defect in the steam pipe or in the drum, except that there was some little rusting at the rivet holes where the head of the drum was fastened in; but there was an iron hoop covering these rivet holes, and this defect was not observable before the accident unless the hoop was removed for the purposes of inspection. This, however, would not cause any trouble, unless considerable pressure of steam was put upon the drum, and no such pressure was necessary in the proper application of the steam for heating the water. The drumheads were not expected to resist any steam pressure. The steam was not to aid in the cleansing of the drum. Hot water, and not steam, was to be used for cleansing purposes. We think, therefore, it could not be found by the jury that there was any defect in the appliance used which caused the accident. It was the result of the improper and careless use of the steam, allowing an excessive amount to go into the drum. The intestate was responsible for this himself. There was no neglect by the defendant in this respect. The intestate was familiar with the steam and its use. He knew how to allow much or little to go into the drum. He had been engaged in this same work for five or six years, and had never before failed to use the steam properly or safely. He made a mistake this time, as the most careful persons will sometimes do. There is too much refinement in

the claim made in behalf of the plaintiff that steam was a dangerous element, and that the intestate was ignorant as to its use and the dangers to be apprehended therefrom, and that the defendant was guilty of negligence in not instructing him. He was not ignorant of the use of steam, as he was using it and had been using it for this cleansing purpose for five or six years. He knew how to use it, and, if he had used the knowledge he possessed, and had not been careless on this occasion, no accident or injury to him would have resulted. We think the only permissible inference that could be drawn by the jury as to the cause of the accident was that it resulted from the carelessness of the intestate in using the steam, and that the defendant was in no way responsible for the accident.

Upon these grounds the nonsuit was properly granted, and should be upheld. The judgment and order should therefore be affirmed, with costs. All concur.